UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | 5:14-CR-50120-JLV |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| ANTHONY KLEIN, | |
| Defendant. | |

Pending is Defendant's Motion to Suppress Evidence (Doc. 50). An evidentiary hearing was held on June 12, 2015. Defendant was personally present and represented by his previous attorney of record, Gary G. Colbath, Jr., Assistant Federal Public Defender. Subsequent to the evidentiary hearing, Mr. Klein retained attorney Scott Armstrong to represent him. The court permitted Mr. Armstrong to submit a supplemental brief in support of the Motion to Suppress. At the June 12, 2015, evidentiary hearing, the Government was represented by Ted McBride, Assistant United States Attorney. One witness testified at the hearing. Four exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following findings of fact and conclusions of law.

**JURISDICTION**

Defendant was originally charged in an Indictment with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). On September 15, 2015, Defendant was charged in a Superseding Indictment with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). The pending Motion was referred to this magistrate judge for the holding of an evidentiary hearing and the issuance of a recommended disposition pursuant to 28 U.S.C. § 36(b)(1)(B) and the March 9, 2015, standing order of the Honorable Jeffrey L. Viken, Chief Judge.

**FACTUAL BACKGROUND**

On June 21, 2014, a FedEx package containing methamphetamine was delivered in error to Klein's neighbor. (Ex. 1 at 7). The neighbor, expecting a FedEx package, opened the package and, upon realizing the mistake, contacted law enforcement. (Ex. 1, p. 7). With this information, law enforcement in Butte County, South Dakota, applied for and was granted a warrant to search Klein's residence for evidence of "drug related items related to distribution activities… all vehicles located on property, [and] urine samples collected from all parties present at the time of execution…." (Ex. 2).

The same day, law enforcement was conducting surveillance of Klein's residence. Shortly before executing the warrant, law enforcement saw two people exit Klein's home, enter a white pickup truck, and leave. (HT at 12). Klein was outside pacing and looking around. He was not engaging in any

illegal activity, but Deputy Hunter thought he looked "suspicious" (Ex. 3, HT at 31). Soon, a taxi arrived and Klein entered the taxi and it drove away from the premises. (HT at 12). Law enforcement determined that they did not want to enter the premises without Klein present because the house backed an open field, they didn't know if anyone was inside of the house, and they had limited officers. (HT at 12). From previous surveillance, they also knew there was a dog in the house. (HT at 12). Law enforcement determined that they would stop the taxi Klein was riding in to bring him back to the house to allow them to safely enter the home and control the dog. (HT at 13). Deputy Hunter also testified that there was no reason to stop the taxi other than the fact that Klein was in the taxi (HT at 13) and to bring Klein back to his residence (HT at 21). There were no traffic violations or other problems with the taxi. (HT at 21).

 Trooper Mez and Detective Little stopped the taxi then searched Klein and confiscated various items including a black Verizon GZONE flip-style phone, a folded up envelope with multiple people's names and phone numbers, a black zipper pouch containing a used methamphetamine pipe, and a white lighter and placed the items in a zip lock bag. (Doc. 51 at 2; HT at 22). Klein was then handcuffed and placed in the back of Deputy Hunter's car. (HT at 23). Officer Hunter testified that Klein was not under arrest at this point, but was not free to leave. (HT at 22).

 Soon after Klein was detained, Officer Hunter transported him back to the residence. (HT at 23). Klein let the officers into the house and they entered the home and began to search. (HT at 23). Klein was still being detained, but

3

was not yet under formal arrest. (HT at 24). Special Agent Andress and Deputy Hunter took Klein to the Butte County Sheriff's Office to question him about the investigation. (HT at 24). Klein was read his <u>Miranda</u> rights and he refused to give statements and requested an attorney. (HT at 25). He was still not yet under formal arrest because law enforcement wanted to see what came of the search of his residence. (HT at 25).

Deputy Hunter also attempted to obtain a urine sample from Klein. (HT at 28). Klein refused, stating that the search warrant only permitted the officers to take his urine sample if he was present at the house when the search warrant was executed. (HT at 29). Because he wasn't at the house, Klein argued, and had been brought there by law enforcement, the search warrant did not mandate his urine sample. (HT at 29). Officer Hunter testified that he told Klein he could take the sample as a search incident to arrest. (HT at 14, 30; Ex. 3 at 2). Klein still refused and Officer Hunter requested and obtained a second warrant, specifically to collect a urine sample from Klein. (Ex. 4).

During the search of Klein's residence, officers found a digital scale with white powdery residue that tested positive for methamphetamine, 12 cell phones that were damaged by water or crushed, a Wells Fargo receipt for $6800.00, lightbulbs manipulated into paraphernalia, and other items that signaled drug use and distribution activities. (HT at 32). These items, along with the drug paraphernalia seized from Klein during his initial stop led to Klein's arrest for possession of drug paraphernalia and methamphetamine. Klein was then taken to Meade County Jail. (HT at 27). At some point during

the explanation of his formal arrest, Klein made a statement "saying he wasn't that big in the grand scheme of things." (HT at 28). It is unclear whether Klein was read his <u>Miranda</u> rights a second time. (HT at 28).

## **DISCUSSION**

In his Motion to Suppress (Doc. 50), Mr. Klein seeks to suppress (1) all evidence collected and seized by law enforcement during his stop and detention; (2) statements made by Mr. Klein to law enforcement during the stop of the taxi and subsequent detention by law enforcement on June 21, 2014; (3) statements made by Mr. Klein to law enforcement following his arrest; and (4) the collection and analysis of his urine (Doc. 50 at 1; HT at 6-7).

Mr. Klein stipulated during the hearing that his motion to suppress does not challenge the basis for, the execution of the warrant at Klein's residence, and the evidence seized therefrom. (HT at 7). Mr. Klein's motion to suppress addresses only the evidence seized from his person by law enforcement during the initial stop and detention, statements made by Klein surrounding his detention and subsequent arrest, and his urine sample. (HT at 4-7, Doc. 67, p. 11-13).

After the hearing, the court entered a briefing scheduling order allowing both parties to submit additional argument and authorities. After the defendant submitted his brief, the government filed a one page response stating that it did not intend to use any evidence seized from Mr. Klein's

5

person.[1] (Doc. 54). The government also does not intend to use any statements "made by [Klein] at the time of his detention." (Id.)

The government intends to use "evidence seized during the execution of [the search warrant of defendant's residence] in its case in chief." (Id.) As the search warrant of the residence was not challenged by Mr. Klein, the government asserts that the motion to suppress should be denied. (Id.)

### A. Suppression of the Evidence Seized From Klein's Person

The government stipulated that it would not use the evidence seized from the person of Mr. Klein. (Doc. 68). Because the government does not intend to offer the contested evidence at trial, the court need not reach the merits of this motion to suppress. The proper course of action is to deny the motion to suppress, subject to renewal if it becomes necessary. See, eg., United States v. Lindsey, No. 10-15 (JNE/JJK), 2010 WL 4822925 at *1 (D.Minn. Nov. 22, 2010); United States v. Mitchell, No. 08-CR-46-LRR, 2009 WL 36605 (N.D. Iowa Jan. 5, 2009). It is respectfully recommended that the motion to suppress the evidence seized from his person during the traffic stop of the taxi as well as Mr. Klein's urine sample be denied as moot.

### B. Suppression of the Statements

The government stipulated that it would not use "any statements made by [Mr. Klein] at the time of his detention." (Doc. 68). While it is ambiguous

---

[1] The government's response specifically references "evidence seized from his person on June 12, 2014." The date of June 12, 2014, appears to be a typographical error. The motion to suppress, the testimony presented at the hearing, and the exhibits make it abundantly clear that June 21, 2014, was the only date evidence was seized from Mr. Klein which is the subject of Mr. Klein's motion to suppress.

from the government's written response whether it intends to use any statements made after Klein's arrest, during the hearing the government conceded that there were "no statements." (HT at 7).   Mr. McBride clarified as follows: "At some point, Klein was Mirandized and declined to talk. There are no—and none of the statements, any statements prior to that just went to whether or not he was going to submit to the urine test. The United States does not intend to introduce any statements from the time he [was] stopped in the cab until the time he [invoked] there were no statements. So that's not an area we need to be concerned about." (HT at 7-8).

After Mr. Klein was arrested and during transport to the jail, Mr. Klein made a statement that "he wasn't that big in the grand scheme of things." (HT at 28). While it appears that the statement occurred after invoking his rights, it is the understanding of the court, based on the government's concession at the hearing (HT at 7-8) that any and all statements made by Klein would not be used by the government in its case in chief. Because the government does not intend to offer the contested evidence at trial, the court need not reach the merits of this motion to suppress.  Again, the proper course of action is to deny the motion to suppress, subject to renewal if it becomes necessary.  See, eg., United States v. Lindsey,  No. 10-15 (JNE/JJK), 2010 WL 4822925 at *1 (D.Minn. Nov. 22, 2010); United States v. Mitchell, No. 08-CR-46-LRR, 2009 WL 36605 (N.D. Iowa Jan. 5, 2009).  It is respectfully recommended that the motion to suppress the statements made by Mr. Klein be denied as moot.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that the motion to suppress be denied in its entirety as moot.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 15th day of October, 2015.

BY THE COURT:

[signature]

DANETA WOLLMANN
United States Magistrate Judge